The court will proceed to the fourth case, Kanter v. Sessions. Ms. Mott Good morning, your honors, and may it please the court. This case turns on two questions. The first is whether the categorical bar to felon firearm possession in the federal and state felon disarmament laws is constitutional in all circumstances, regardless of the offense committed and regardless of the profile of the convicted felon. The government has said yes, and the district court, by implication, said yes. But we say no, and we believe this court has held the answer is no by opening the door to as-applied challenges in United States v. Williams and requiring that the government continue to prove the constitutionality of the application of its ban. Requiring, in short, that the courts continue to put the government through its paces. The second question is if the answer is no if the possibility of as-applied relief does exist for felons in certain circumstances, does Mr. Kanter qualify for that as-applied relief? And we believe the answer is clearly yes. We also want to be clear what this case is not about. This is not about a broad invalidation of the long-standing felon disarmament laws. We've brought an as-applied challenge focused on Mr. Kanter's individual circumstances for a reason. This case is also not about a change in this circuit's Second Amendment jurisprudence. This court has already recognized that as-applied relief may be appropriate in the right case. And in our view, this is that case. So for those reasons, Your Honors, we would respectfully request this court reverse the decision of the district court. The Seventh Circuit has analyzed Second Amendment claims under a two-part framework. The first question is whether the regulated activity falls within the scope of the Second Amendment. This is a historical and textual inquiry, and if the government can establish that the challenged law regulates activity falling outside the scope of the right as originally understood at the time of the founders, then the regulated activity is categorically unprotected and the law would not be subject to further Second Amendment review. But this court has also held if the government cannot meet that burden, or even if the history is inconclusive, there must be a second inquiry into the strength of the government's justification for restricting or regulating the exercise of Second Amendment rights. And the burden is on the government to prove the constitutionality of the application of its ban. Moving to the first step of the test, the historical analysis is at best inconclusive. This court has already recognized as such in United States v. Williams, specifically holding, quote, the academic writing on the subject of whether felons were excluded from the test. Williams was decided in 2010, and the government has pointed to nothing since then that conclusively resolves the historical question. That brings us to the second step of the inquiry, because again, there must be a second inquiry into the strength of the government's justification for the application of its ban. This court has tended to use intermediate scrutiny to resolve the second step of this challenge, and again, the government has failed to meet its burden. The intermediate scrutiny inquiry asks whether the government has used means substantially related to the objective it seeks to achieve. Now, we admit that the government has an important objective in this case, but it is also important to remember what the interest behind these felon disarmament laws is, and that's preventing armed violence. This court has formulated that objective in a number of different ways across its jurisprudence, but they all get at that same core concept. Counselor, let me ask you a question. Do you recognize the validity of any categorical bans? And let's think about it in the felon context in particular, since as you say that the history is inconclusive at best, and we said that with respect to violent felonies as well. Do you recognize any ability of Congress to make a categorical exclusion? Absolutely. Congress, this court has already held that Congress can enact categorical bans. And would as-applied challenges, so let's say violent felonies is a line, so as-applied challenges are only available to those who fall outside of that category? Well no, Your Honor. An as-applied challenge would still be available to someone who falls outside of a particular category, but this court has already held the government can and has met its burden on intermediate scrutiny to show that nevertheless the government has properly excluded them, has properly regulated their exercise of their Second Amendment rights. The question is whether they fall outside the scope of the Second Amendment as originally understood. If so, then you look at the application of the ban in a particular circumstance, and this court has already recognized that in the case of violent felons, for example, there is a connection. The government has used a means substantially related to its interest in curbing violent crime, in preventing those who have already shown a propensity toward violence from exercising Second Amendment rights. And again, it is curbing violence that's behind the government's interest. In United States v. Sloyan, this court articulated the interest as protecting against armed mayhem. In Williams, keeping firearms out of the hands of violent felons. In Yancey, United States v. Yancey, the interest was articulated as suppressing armed violence. In Bair v. Lynch, this court held that the interest was keeping those most likely to misuse firearms from obtaining them. The Supreme Court has also articulated the interest in the same way, keeping guns out of the hands of those who have shown they cannot be trusted to possess a firearm without becoming a threat to society. So logically, to pass constitutional muster at the second step, at the intermediate scrutiny step, the government needs to show that the individual to whom the prohibition is directed poses a risk of armed violence. And that's where the government fails in this case. They have failed to show that denying Mr. Cantor specifically the right to possess a firearm is substantially related to their interest in suppressing armed violence. And as applied challenge needs to look at Mr. Cantor's individual circumstances, that's the nature of challenges like these. And in fact, as applied challenges to the felon disarmament laws have been defeated by challengers' personal circumstances in this circuit, the government has in the past relied on the personal circumstances of a challenger in order to meet its burden on intermediate scrutiny. That happened in United States v. Scorion. Mr. Scorion in that case had a history of recidivism and a history of a propensity toward violence. That happened in United States v. Williams. The government attempted explicitly to meet its burden by pointing to Mr. Williams' own violent past. And this court held that that evidence passed constitutional muster. But in this case, the government has suggested we should not look to Mr. Cantor's individual circumstances, not because it's inappropriate in the as-applied context, but because the government does not have evidence specific to Mr. Cantor to show that preventing him from having a firearm furthers its interest in curbing armed violence. Nothing in his background causes him to pose any more of a risk of violence than an average American citizen without a felony conviction. He has no history of violence or a propensity toward violence. He has no history of domestic abuse. He has no history of drug abuse or mental illness. This is his first ever criminal conviction for a crime that the sentencing judge explicitly recognized did not harm any members of the public. The only purported risk factor the government has identified is the fact of his felony conviction. But if that's enough, then no felon can ever succeed on a constitutional challenge to the felon disarmament laws, because every felon who brings a challenge will have that felony conviction in their background. That's inconsistent with this court's Second Amendment jurisprudence. We recognized in United States v. William that we still have to put the government through its paces. Quote, but the government does not get a free pass simply because Congress has established a categorical ban. It still must prove the ban is constitutional, a mandate that flows from Heller itself. Heller referred to felon disarmament laws only as presumptively lawful, which by implication means there must exist the possibility that the ban could be improving the constitutionality of Section 922G1 is only proper. It is certainly not putting the government through its paces to hold that they have met their burden simply by pointing to the fact of Mr. Cantor's felony conviction, a fact that will be present in every challenge like this. It's a backdoor way of excluding an entire class of citizens from the Second Amendment's protections, and it's inconsistent with the presumption recognized by the Supreme Court in this court that Second Amendment rights presumptively belong to all Americans. I do briefly want to address a recent case from the Southern District of Illinois, Hatfield v. Sessions, in which the court held that a felon was entitled to as applied relief, but expressly distinguished this case because Mr. Cantor did receive a custodial sentence of a year and a day. We respectfully disagree with the Hatfield court that the length of the sentence is an appropriate point of distinction. Sentencing depends heavily on a judge's discretion and the same facts which are very different sentences from different judges. The notion that a sentence reflects the seriousness of a crime may be true in a loose and abstract sense, but that's not the same as reflecting a risk of violence, and it's particularly unsuited for white-collar criminals because frequently a sentence will be based on factors that are unrelated to whether it's appropriate to regulate the exercise of Second Amendment rights, again, unrelated to that history of violence. So we believe that the district court may have gotten there the wrong way, but Hatfield does recognize and stand for a couple of very important principles. First, that court recognized, as we argue here, that it is inappropriate to impose a categorical bar on these as-applied challenges with no exceptions. If the court were only to consider felons in the aggregate the Hatfield court held, there would be no distinction between an as-applied challenge to Section 922G1 and a facial challenge. And as recognized already in United States v. Williams, these challenges do exist, the possibility of relief does exist. Second, the Hatfield court noted the importance of the constitutional protection. That court held that while reasonable minds throughout the government and the people may disagree on gun rights as a policy matter, they cannot ignore the Second Amendment in the process. So, Your Honors, we would request that this court reverse the decision of the district court, and it has two options as to what kind of relief to grant. We believe it would be appropriate to reverse and enter judgment for Mr. Cantor. He did move for summary judgment in the district court, putting the government on notice that it needed to come forward with any facts that it had to show that the application of the ban to Mr. Cantor was constitutional, and they have not done so. If, however, the government believes that it has facts specific to Mr. Cantor that it can proffer, and this court believes further factual development would be helpful, then this court can vacate and remand for further factual development. However, we would ask that the government here today proffer any of those facts specific to Mr. Cantor to show that vacation and remand would be appropriate, because if the government continues to rely on the fact of his felony status, then remand will not achieve anything. So, for those reasons, Your Honors, we would request that this court reverse the decision of the district court and enter judgment for Mr. Cantor. I will reserve the rest of my time for rebuttal. Thank you, Ms. Mark. Mr. Nemeroff? May it please the Court. Patrick Nemeroff on behalf of Attorney General Sessions. The plaintiff here is prohibited from possessing firearms because he was convicted of a federal felony punishable by up to 20 years in prison. In Heller, the Supreme Court emphasized that nothing in its opinion cast doubt on longstanding prohibitions on the possession of firearms by felons. It identified the Second Amendment right as belonging to the law abiding and responsible, and it described the felon of possession prohibition as falling within an exception to the Second Amendment. Now, applying Heller, no court of appeals has ever held 922G1 unconstitutional as applied to someone convicted of a federal felony. And this court's precedent is entirely consistent with that result. This court in Yancey recognized that historically the Second Amendment right attached to the virtuous citizenry, such that unvirtuous citizens could be disarmed. Now, if that is consistent, then the Second Amendment resembles rights like the right to vote, or the right to serve on a jury, or the right to hold public office. But the 14th Amendment authorizes states to take away the right to vote different. That's right, but the 14th Amendment authorizes it based on the historical understanding of the right that led up to the 14th Amendment, and that's described in Rodriguez v. Ramirez in the Supreme Court's decision addressing the scope of that authorization. So you're right, but it is a longer-standing tradition than that. And so it's long been understood that a felony conviction can result in the forfeiture of certain rights. The Second Amendment is one of those rights. Now, plaintiff Could there be as-applied challenges, as Williams recognized, or is your position there should not be? Our position is that there would not be any successful as-applied challenge to Section 922G1. And this court, just to be clear, because plaintiff relies on a number of decisions where this court upheld the statute as applied to violent felons. Now, the fact that the court found it relatively easy to uphold the statute in that context doesn't mean that it suggests that there's a problem with respect to the broader scope of felons. It also certainly doesn't mean that there needs to be an individualized inquiry as to every individual plaintiff who comes before the court. And in fact, the court has made a number of statements to the contrary. So in Skoyne, for example, the court said, Congress is not limited to case-by-case exclusions of persons who have been shown to be untrustworthy of weapons, nor need these limits be established by evidence presented in court. The court repeated similar, that was at page 641 of Skoyne, the court repeated similar statements in Yancey at page 683 and in Williams itself at page 692. Now, plaintiff also tries to rely on a statement in Williams citing the dissent from Skoyne regarding the scholarship on the traditional understanding of the felon prohibition as a reason to move on to step two. But the important point is that Williams, just like the other cases addressing this statute, simply didn't rule on step one, whether felons fall outside the Second Amendment altogether, because it found that the statute could be upheld of the second step. And that was appropriate. That makes sense in that context. But here, the issue before the court is whether felons as an entire class can be disarmed, and it would be appropriate for the court to engage with the first step. And here, as the court recognized in Yancey, the traditional understanding is that the right attaches to virtuous citizens, and certainly the understanding of felony convictions has long been that that can result in the forfeiture of certain rights. So there's every reason for this court to hold that felons simply fall outside of Second Amendment protection, and that would be consistent with what the Supreme Court itself said in Heller. Now, the other tact plaintiff's take is to suggest that the court maybe should draw a line between violent felons and nonviolent felons. And I just want to emphasize what a remarkably broad holding that would be to say that 922G1 is unconstitutional as to anybody convicted of a crime that a court might characterize as nonviolent. And there are a number of reasons why the court shouldn't reach that holding. And even before I list those reasons, a number of courts of appeals have recognized that the statute is constitutional as applied to individuals convicted of crimes they deem nonviolent. Now, the reasons not to reach that holding are, first, with respect to the traditional understanding of the right, someone who's been convicted of a nonviolent felony falls outside of the law-abiding responsible citizenry to which Heller stated that the Second Amendment right attaches. And so that is the reason for those individuals to fall outside the scope, and there's no reason that should depend on whether or not the crime can be deemed violent or nonviolent. Second, it's worth noting that the line between violent and nonviolent crimes is not at all clear, and that's been made clear by the Supreme Court's recent decisions in United States v. Johnson and DeMaio v. Sessions. And so if the court were to try to adopt that sort of line, it would be inviting all kinds of problems in terms of administrability and notice to defendants about where Section 922G1 is permissible. And that's precisely why Congress reasonably did not ask courts to engage in a crime-by-crime evaluation to determine whether someone should be prohibited from possessing firearms. And so whether you look at it at the first step, the reasons for the traditional loss of the right, or the second step, under intermediate scrutiny, is certainly a permissible judgment by Congress to draw the category at felons as a whole. And the last point is, if the court were to hold it unconstitutional as applied to nonviolent felons, that would be difficult, if not impossible, to reconcile with this court's own decisions in Yancey and Mazar-Rodriguez. In Yancey, the court upheld the 922G3 with respect to unlawful drug users. There was no evidence cited in that decision about the individual being violent in any way. And in Mazar-Rodriguez, the court upheld 922G5's prohibition on illegal immigrants. And there, the court specifically stated that the government didn't come forward with evidence that it found persuasive that such individuals were going to be violent in the future, but it said that the government has a strong interest in preventing people who already have disrespected the law from possessing guns. And that's at 798F3 at 673. And then it went on to list 922G1 as one of the statutes that serves that interest. So there just isn't a basis for drawing the line between violent and nonviolent felons. And again, there's no precedent for this court engaging in the sort of individualized inquiry that Pinniff's asked for. And that also would raise lots of problems of administrability, feasibility. And that's underscored by Congress's history, by Congress's experience with 925C. So Section 925C provided an avenue for individuals to apply for relief from ATF and the prohibition. But Congress found that even when ATF agents were spending 40 man-years annually to go out into the field and investigate these applications, they were still making mistakes, such that people whose firearms rights were restored would go out and commit crimes with firearms. And in light of that, Congress defunded the provision. And that just underscores why this court, which is certainly not in the same position as ATF in its ability to gather facts, should not engage in that inquiry as a basis for Section 922G1's application. If there are no further questions, thank you very much. Thank you, Mr. Nemeroff. Mr. Shaw. Ms. Shaw. May it please the Court, Sobhan Shaw for Wisconsin. Wisconsin's Felon in Possession Law is constitutionally applied to Mr. Cantor, who recently committed a serious federal crime. His federal felony places him squarely among those individuals who would have been disqualified from exercising Second Amendment rights during the founding. And the nonviolent nature of his federal felony does not return him to the risk status of a law-abiding, responsible citizen. At Step 1 of this Court's two-step inquiry, the historical evidence is conclusive that Mr. Cantor's fraud would have disqualified him from Second Amendment rights. Fraud was a felony around the time of the founding. Counterfeiting, a word which appears in the federal mail fraud statute, was punished severely. Cantor's offense is analogous to these historical crimes. As a result, he was excluded from the scope of the right, and this law is constitutionally applied to him and is not subject to further Second Amendment review. But even if this Court disagrees with the government's evidence on Step 1, Wisconsin's law survives intermediate scrutiny. Cantor concedes that the interest here is important. In fact, some courts of appeals have found it compelling, like the D.C. Circuit and the Sixth Circuit. And only a reasonable fit, not a perfect one, is required. One that is in scope, whose scope is in proportion to the interest served. And as my colleague mentioned, the government need not justify case-by-case exclusions by evidence presented in court. Why is it a tight fit between the goal of discouraging dangerous people from having weapons and banning someone like Mr. Cantor, who has been convicted of a nonviolent felony, from having a weapon? I mean, as I read the statistical evidence in your briefs, your best number is 30% of nonviolent felons later commit a violent felony. I would begin by saying that the only indication of dangerousness is not a history of violence. And the empirical evidence does suggest that nonviolent felons are more dangerous than law-abiding, responsible citizens. And this Circuit and other Circuits have said that that is the operative inquiry, whether the category is more dangerous. But how much more likely? So if it's intermediate scrutiny, it's not rational basis. If 30% is your best number, is that enough? And if so, why is that enough to satisfy intermediate scrutiny? So the average citizen has a minuscule likelihood of being arrested for a violent crime. It's less than 1%, according to the FBI statistics in 2011. And an increase of, I think you were mentioning, Your Honor, 20% or 30%, if that is the violent crime risk rate for someone with a white collar crime, that is a substantial increase over what a law-abiding, responsible citizen, what their risk rate is. And therefore, it does satisfy intermediate scrutiny, which requires a reasonable fit. The way I think about it is a little bit like an expected value equation. So you multiply the likelihood of something happening by the harm of that event. And in these cases involving firearms, they are sometimes fatal. The harm is very high. And therefore, an increase of, you know, 300% more five times. One of our studies, the Journal of the American Medical Association, showed that the relative risk of someone with a nonviolent conviction is five times that of a law-abiding, responsible citizen. That increase, given the potential harm, is enough to satisfy intermediate scrutiny. And as my colleague mentioned, every circuit to address felons as applied challenges to this law, they have upheld, given the statistical evidence, they've upheld it even as against nonviolent felons. And Mr. Cantor's demographic characteristics do not and cannot entitle him to relief. This court has never relied on individual characteristics when addressing these challenges. In the Scoyne case, it was about the nature of his crime, the domestic battery. In the Williams case, it was about the nature of his crime again, Indiana's robbery statute. And using someone's demographic and socioeconomic characteristics might be constitutionally problematic. As my colleague mentioned, the ATF program, which aimed to conduct these individualized dangerousness determinations, where ATF agents would go interview friends, neighbors, family, employers, parole agents, and try and assess whether this particular felon was no more dangerous than a law-abiding, responsible citizen, resulted in too many mistakes. And as the United States Supreme Court said in the Bean case, courts are even less equipped to make these sort of individualized dangerousness determinations. And Mr. Cantor provides no guidance for how his regime would work. Which individual characteristics would matter? Would marital status matter? Does number of children matter? Why should these characteristics matter? How much weight should they be given? As a result, the district court here appropriately considered Mr. Cantor's quote-unquote unique characteristics, the fact that his felony conviction was for a nonviolent felony, and held that he could not succeed on his as-applied challenge. He did not show that he was no more dangerous than a law-abiding, responsible citizen, the core of the right that the Supreme Court identified in Heller and reaffirmed in the McDonald case. This court should affirm the decision of the district court. Thank you, Michelle. Ms. Moore. Your Honors, I just have a few points to make on rebuttal. Could you keep your voice up a little bit, please? Of course. Sorry. First, both the federal and state governments have claimed that the history is conclusive. The federal government has suggested that this notion of virtuous citizenry is what governs the Second Amendment right. But this court has actually rejected the notion that somebody's moral background, or whether they're a virtuous citizen, is the determining factor in whether the Second Amendment applies in United States v. Mesa Rodriguez. This court recognized the Second Amendment is not amenable to that sort of on-again, off-again protection. And the state has claimed that because fraud was a felony at the time of the founding, felons are excluded as a body from the scope of the Second Amendment's protections, but they did not show that felons as a body were, in fact, excluded, simply that fraud was a felony back then. So the history is by no means conclusive, and it's necessary to go to that second step of intermediate scrutiny. The government has suggested that no as-applied challenge can ever succeed, even if the government is unable to show any connection to the government's actual interest in preventing against armed violence. And this is inconsistent, again, with this court's recognition that the government must continue to prove the constitutionality of the application of its ban. In Scoyan and in Williams, both of those cases, this court held that those particular plaintiffs were unsuited because of their personal characteristics to bring an as-applied challenge. Mr. Scoyan was held to be a poor fit. Mr. Williams was not the proper plaintiff to bring a challenge because of the violence in both of their pasts. But Mr. Cantor has none of that. I also want to correct or address something the federal government suggested, that we are asking for a ruling saying that all nonviolent felons, this statute is unconstitutional as applied to all nonviolent felons, and that is not the case. We are bringing an as-applied challenge specific to Mr. Cantor's circumstances because we recognize there may be other risk factors in a person's background or there may be circumstances surrounding a particular felon. Yeah, but you rely heavily on the nonviolent aspect, do you not, Ms. Mark? Yes, certainly I do. So if Mr. Cantor had received, had burglarized a commercial institution with no one in attendance and received this sentence of a year, would you consider that a nonviolent situation? That would depend on the court's view. The state's interpretation of what burglary is? Sure, yeah, it would depend on the state. So if the state considered burglary a violent crime. Then this court has already held that crimes that include as one of their elements the use or threatened use of force or some propensity toward violence, that's enough to meet the government's burden. But it hasn't done so in this case. I see that I'm essentially out of time. If there are no further questions, we would ask that this court reverse the decision of the district court. Thank you. Thank you. Thank you all, counsel. Case is taken under advisement.